UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLEMING INTERMEDIATE HOLDINGS LLC, | |
| Plaintiff, | Case No. 24 Civ. 5335 (JLR) |
| v. | **Oral Argument Requested** |
| JAMES RIVER GROUP HOLDINGS, LTD., FRANK D'ORAZIO, and SARAH DORAN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR RECONSIDERATION</u>**

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT ......................................................................................................................... 4

      I.     The Court Overlooked Properly Presented Matters Warranting
            Reconsideration.................................................................................................. 4

      II.    The Alleged Securities Fraud Should Not Be Dismissed As Predominantly
            Foreign. ............................................................................................................ 5

            A.     The Court Should Not Have Weighed Opposing Factors to Find
                 that the Securities Claims Are Predominantly Foreign............................ 6

            B.     The Court Overlooked Critical Domestic Conduct. .................................. 9

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page

## CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)..................................................................................5

*Agnesini v. Dr.'s Assocs., Inc.*,
  2014 WL 13115580 (S.D.N.Y, 2014)................................................................4

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)..............................................................................7

*Arco Cap. Corps. Ltd. v. Deutsche Bank A.G.*,
  949 F. Supp. 2d 532 (S.D.N.Y. 2013).............................................................11

*Barnes v. City of New York*,
  68 F.4th 123 (2d Cir. 2023) ..............................................................................8

*Black v. Diamond*,
  163 F.App'x 58 (2d Cir. 2006) .........................................................................4

*Callahan Min. Corp. v. C.I.R.*,
  428 F.2d 721 (2d Cir. 1970)..............................................................................7

*Cavello Bay Reinsurance Ltd. v. Shubin Stein*,
  986 F.3d 161 (2d Cir. 2021)........................................................................6, 11

*Choi v. Tower Research Cap. LLC*,
  890 F.3d 60 (2d Cir. 2018)................................................................................8

*Giunta v. Dingman*,
  893 F.3d 73 (2d Cir. 2018)...........................................................................8, 11

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)..............................................................................7

*Marsh & McLennan Agency LLC v. Ferguson*,
  2025 WL 1642119 (S.D.N.Y. 2025).................................................................4

*Mikol v. Barnhart*,
  554 F. Supp. 2d 498 (S.D.N.Y. 2008)..............................................................4

*Moazzaz v. Met Life, Inc.*,
  2024 WL 2330751 (S.D.N.Y. 2024).................................................................5

**TABLE OF AUTHORITIES**
(continued)

Page

*Morrison v. Nat'l Australia Bank*,
    561 U.S. 247 (2010)................................................................................................7

*Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE*,
    763 F.3d 198 (2d Cir. 2014)............................................................................2, 6, 8

*Perttu v. Richards*,
    605 U.S. 460 (2025)................................................................................................7

*In re Platinum & Palladium Antitrust Litig.*,
    61 F.4th 242 (2d Cir. 2023) ................................................................................8, 10

*Schoolcraft v. City of New York*,
    298 F.R.D. 134 (S.D.N.Y. 2014) ............................................................................4

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995).................................................................................4, 5

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ..................................................................................6

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)................................................................................................7

*United States v. Barnes*,
    158 F.3d 662 (2d Cir. 1998)....................................................................................5

*Vine v. Beneficial Fin. Co.*,
    374 F.2d 627 (2d Cir. 1967)...............................................................................1, 10

*In re Volkswagen AG Sec. Litig.*,
    661 F. Supp. 3d 494 (E.D. Va. 2023) ....................................................................6

*Williams v. Binance*,
    96 F.4th 129 (2d Cir. 2024) ................................................................................7, 8

## RULES

Fed. R. Civ. P. 52.....................................................................................................4

Fed. R. Civ. P. 54.....................................................................................................4

Fed. R. Civ. P. 59.....................................................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page

Fed. R. Civ. P. 60........................................................................................................4

S.D.N.Y. Local Rule Rule 6.3 .....................................................................................4

**TREATISES**

Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.)................................8, 9

*Predominant*, Black's Law Dictionary (12th ed. 2024)..................................................6

## INTRODUCTION

Fleming Intermediate Holdings LLC ("Fleming") respectfully moves for reconsideration of this Court's July 17, 2025 Opinion and Order, Dkt. 72 ("Opinion"), granting Defendants' motion to dismiss Fleming's Amended Complaint, Dkt. 39 ("Compl."). While the Court correctly held that Fleming adequately alleged that the parties engaged in a domestic securities transaction, it should reconsider its finding that Fleming's claims were "impermissibly extraterritorial," Opinion 27-28, because the Court overlooked issues that were properly before it.

*First*, the Opinion does not address the propriety of resolving questions of extraterritoriality by "weighing" competing facts "pled in the complaint." July 2, 2025 Hearing Transcript ("Tr.") 103:21-104:1. Fleming argued that the requisite balancing "should not be decided on a motion to dismiss" because whether domestic or foreign factors predominate is "a question of fact that a jury should be finding." *Id.* at 104:2-17. The Opinion overlooked that critical procedural question and instead resolved the multifactor predominance inquiry against Fleming, without drawing all reasonable inferences in Fleming's favor as required at the pleading stage.

*Second*, Fleming alleged that Frank D'Orazio misled a court to obtain an order compelling Fleming to close the transaction, which constitutes substantial domestic conduct such that Fleming's claims are not impermissibly extraterritorial. Defendants filed a knowingly false affidavit with a New York court, which then relied on Defendants' misrepresentations when enjoining Fleming to close the transaction. Dkt. 58 ("Opp.Br.") 4. Under binding authority, a securities fraud claim lies if it is alleged "there was deception which misled [a relevant decisionmaker] and that this was in fact the cause of plaintiff's claimed injury." *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 635 (2d Cir. 1967). Yet the Opinion makes no mention of that entirely domestic course of events.

Fleming respectfully submits the Court should grant reconsideration and hold that, at the pleading stage, Fleming has plausibly alleged securities fraud that a finder of fact could conclude is not predominantly foreign, and then proceed to find that Flemings' claims are sufficiently pleaded for the reasons set forth in the parties' previously submitted papers.

## **BACKGROUND**

Bermuda-incorporated companies Fleming and James River Group Holdings, Ltd. ("James River") negotiated and executed in the U.S. a stock purchase agreement (the "Agreement") through which Fleming agreed to purchase the equity of a subsidiary then-owned by James River.  Opinion 1-5, 23-27.  Fleming subsequently suspected that James River had violated the Agreement and informed James River that it would not close until James River cured its breaches.  Compl. ¶405. Instead of engaging with Fleming, James River rushed to New York and sought a mandatory preliminary injunction compelling Fleming to close.  Opp.Br. 4.  A state court granted the injunction based on a perjured affidavit signed by Frank D'Orazio, James River's chief executive officer, who knowingly misrepresented that there had been no improprieties and that all "conditions to closing required under the Agreement had been or would be satisfied at closing," including that James River's "representations and warranties" in the Agreement would be true "at closing."  *Id.*; Opinion 18; Compl. ¶361.  Pursuant to that domestic court order, the parties closed through a remote exchange of funds and documents among individuals located domestically, including James River's provision of a closing certificate signed by D'Orazio restating the same false representations he had previously made to the state court.  Opp.Br. 2, 4; Compl. ¶¶97-102.

After closing, Fleming unearthed previously unknown evidence of James River's fraud and other misconduct and commenced this securities fraud suit.  Opp.Br. 4.  Defendants moved to dismiss on grounds including that Fleming's securities claims were "so predominantly foreign as to be impermissibly extraterritorial" under *Parkcentral Global Hub Ltd. v. Porsche Automobile*

*Holdings SE*, 763 F.3d 198, 216 (2d Cir. 2014).  At oral argument Fleming noted that *Parkcentral*'s predominance standard requires evaluating "the facts in their entirety" to see whether foreign or domestic factors "weigh[] heavier on the scale."  Tr. 103:18-20.  The Court questioned whether that "weighing" can be done "on a motion to dismiss," to which Fleming responded that the requisite balancing presents "a classic question of fact that should not be decided on a motion to dismiss" because "reasonable minds can differ" as to what predominates where, as here, there are "some facts pointing one way and [other] facts pointing the other way."  *Id.* at 103:21-104:17.

The Court issued its Opinion on July 17, 2025.  The Court first held that Fleming had adequately alleged that its "purchase of…shares constituted a domestic purchase" because the Agreement "was negotiated…and, more importantly," James River "incurred liability" in the U.S. to sell its securities, including because the Agreement was executed here.  Opinion 23-28.  The Court nevertheless dismissed Fleming's securities claims by finding that they "involve conduct so predominantly foreign as to be impermissibly extraterritorial."  *Id.* at 28-37.  Lastly, the Court declined to exercise supplemental jurisdiction over Fleming's state law claims after dismissing the federal claims.  *Id.* at 37-38.

Despite Fleming's argument concerning the impropriety of weighing competing facts on a motion to dismiss, the Opinion does not address that critical procedural issue.  Furthermore, the Opinion does not address D'Orazio's perjured affidavit, which the state court relied on when compelling the transaction to close, nor that D'Orazio domestically reiterated and transmitted the same false statements to Fleming in his closing certification as a condition precedent for closing the transaction within the U.S.  *See* Opp.Br. 2, 4, 17-18.  The Opinion (at 36) notes that "the parties were before a New York court only because of the [Agreement's] forum-selection clause" while overlooking the domestic conduct that occurred as a result of that provision.

3

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) authorizes this Court to "alter or amend a judgment" upon a motion "filed no later than 28 days after the entry of the judgment." As used therein, "judgment" refers to "any order from which an appeal lies," Fed. R. Civ. P. 54(a), including an order dismissing a complaint, *Agnesini v. Dr.'s Assocs., Inc.*, 2014 WL 13115580 (S.D.N.Y, 2014). Likewise, Local Rule 6.3 allows a "motion for reconsideration" so long as it is brought within the timeline provided by Rule 59. Alternatively, reconsideration is also appropriate under Rules 52(b) and 60(b). The same standards apply to these rules. *See, e.g.*, *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014); *Marsh & McLennan Agency LLC v. Ferguson*, 2025 WL 1642119, *3 (S.D.N.Y. 2025). Reconsideration is appropriate if the court "overlooked" matters that "might materially have influenced its earlier decision." *Schoolcraft*, 298 F.R.D. at 136; *accord Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Whether to grant such motions lies within "the sound discretion of a district court judge." *Mikol v. Barnhart*, 554 F.Supp.2d 498, 500-01 (S.D.N.Y. 2008).

## ARGUMENT

### I.    The Court Overlooked Properly Presented Matters Warranting Reconsideration.

Fleming does not make this motion lightly, recognizing that "[r]econsideration of a court's prior order…is an extraordinary remedy to be employed sparingly." *Schoolcraft*, 298 F.R.D. at 136. Nevertheless, it has identified both "law [and] facts overlooked by the court in its initial ruling" that "might reasonably be expected to alter the conclusion reached by the court." *Black v. Diamond*, 163 F.App'x 58, 61 (2d Cir. 2006).

First, the Court questioned whether it could "weigh[]" facts relevant to the predominantly foreign inquiry "on a motion dismiss," in response to which Fleming argued that determining whether domestic or foreign conduct "weigh[] heavier on the scale" is "a classic question of fact

that should not be decided on a motion to dismiss." Tr. 103:21-104:15. Because "the court raised the issue *sua sponte*," it is appropriate to "entertain the argument in the instant motion for reconsideration." *Moazzaz v. Met Life, Inc.*, 2024 WL 2330751, *1 (S.D.N.Y. 2024); *accord United States v. Barnes*, 158 F.3d 662, 673 (2d Cir. 1998) (issue "flagged…in a way that could not be missed" is properly considered even if "raised for the first time at oral argument").

Second, Fleming alleged substantial domestic conduct giving rise to its federal claims that the Opinion does not mention. Fleming argued that "D'Orazio falsely swore to a state court judge that [closing conditions] were satisfied, which he reiterated" at the domestic closing, and that "Fleming relied on Defendants' intentional misrepresentations when entering the Agreement and closing the transaction." Opp.Br. 2. Furthermore, the state court acted domestically when it relied on D'Orazio's misrepresentations. *Id.* at 4, 13-14, 17-18. Fleming also explained at oral argument that D'Orazio made false statements in a "closing certificate" that was a condition precedent to closing, Tr. 47:15-19, and that "the New York court compel[ed] this transaction to close based on the false and misleading affidavit from Mr. D'Orazio," *id.* at 109:14-16. Fleming made clear that it would not have closed on the domestic transaction but-for the state court order that issued based on D'Orazio's perjury and his subsequent false closing certificate—all of which occurred domestically. Compl. ¶405. The Opinion nevertheless "broadly characterize[d]" Fleming's extraterritoriality arguments as alleging that (i) "executives operated" domestically, (ii) the transaction was financed domestically, and (iii) "negotiations occurred" domestically. Opinion 31. That overlooks well-pleaded facts concerning domestic conduct that "might reasonably…alter the conclusion reached." *Shrader*, 70 F.3d at 257.

## II.    The Alleged Securities Fraud Should Not Be Dismissed As Predominantly Foreign.

To evaluate whether securities claims are impermissibly extraterritorial, courts in this Circuit first consider whether a particular securities transaction is "domestic," *Absolute Activist*

*Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 62 (2d Cir. 2012), and, if so, they next consider whether "the claims in [a] case are so predominantly foreign as to be impermissibly extraterritorial," *Parkcentral*, 763 F.3d at 216. The latter inquiry "is a gloss on" Supreme Court precedent meant to "flexibly consider[]" whether federal securities laws apply to a given domestic transaction, *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 166 (2d Cir. 2021), which requires "careful attention to the facts of each case," *Parkcentral*, 763 F.3d at 217, in order to determine whether domestic or foreign factors are "[m]ore powerful, more common, or more noticeable," *Predominant*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Because that necessarily involves weighing divergent factors, the Second Circuit has made clear that its "predominantly foreign" test "cannot, of course, be perfunctorily applied…based on the perceived similarity of a few facts" between cases because the "innumerable forms" that transactions can take precludes devising "a test that will reliably determine when a particular invocation of § 10(b) will be deemed appropriately domestic or impermissibly extraterritorial." *Parkcentral*, 763 F.3d at 217. For this reason, other courts have noted that *Parkcentral* "mudd[ied]" the "workable, consistent test for whether to apply § 10(b) to a particular securities transaction" that focused solely on whether or not the transaction is domestic, *In re Volkswagen AG Sec. Litig.*, 661 F.Supp.3d 494, 514 (E.D. Va. 2023), by imposing "an open-ended, under-defined multi-factor test" for evaluating extraterritoriality, *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 950 (9th Cir. 2018). As set forth below, Fleming respectfully submits that the Opinion's application of that multi-factor test overlooked two critical issues.

### A. The Court Should Not Have Weighed Opposing Factors to Find that the Securities Claims Are Predominantly Foreign.

The Opinion overlooked controlling caselaw establishing that it was improper to weigh divergent facts at the pleadings stage to find the claims here "predominantly foreign." Whether

securities laws are being applied extraterritorially "is a merits question" rather than one "of subject-matter jurisdiction." *Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 254 (2010). That is a critical distinction because "judges may resolve factual disputes in the course of determining whether subject matter jurisdiction is proper" but not "when the factual disputes are intertwined with the merits." *Perttu v. Richards*, 605 U.S. 460, 472 (2025).

Issues "involving…the application of a legal standard to a particular set of facts" may properly be "characterized as a mixed question of law and fact" for which "the underlying objective facts…are merely the starting point for the ultimate determination" of whether the standard has been satisfied. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). In such circumstances, "delicate assessments" of how to weigh competing factors are "peculiarly ones for the trier of fact," and the matter is only "appropriately resolved as a matter of law" if "reasonable minds cannot differ on the question," *id.*, because "all reasonable inferences" must be drawn in the plaintiff's favor at the pleading stage. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 169 (2d Cir. 2015). "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion"; rather, it "is one for the factfinder." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184-85 (2d Cir. 2012). That encompasses the question of extraterritoriality, which presents a "mixed question[] of fact and law where [the] decision is so tied to the fact-finder's assessment of the proper interplay between the various factual elements and a fairly non-technical…standard that primary weight should be given to the fact-finder's conclusions" on the basis of evidence that has yet to be adduced. *Callahan Min. Corp. v. C.I.R.*, 428 F.2d 721, 726 (2d Cir. 1970); *cf. Williams v. Binance*, 96 F.4th 129, 145 (2d Cir. 2024) ("concern[s] about…predominance under Rule 23(b)(3)" for class certification purposes are "to be decided after the motion to dismiss stage").

The Second Circuit has repeatedly reversed dismissals of claims as extraterritorial where "substantial domestic contacts" have been adequately alleged, *Giunta v. Dingman*, 893 F.3d 73, 82 (2d Cir. 2018), holding that district courts have "erred in discounting the defendants' domestic activity in furtherance of" alleged wrongdoing so long as "sufficient domestic activity" has been pleaded, *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 268 (2d Cir. 2023); *see also Williams*, 96 F.4th at 136-41; *Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 68 (2d Cir. 2018). Although *Parkcentral* and *Cavello Bay* affirmed dismissal on extraterritoriality grounds, neither addressed whether or how to weigh competing inferences where different facts point in different directions. Tr. 104:4-13. Such inferences as to which facts predominate cannot be drawn in favor of defendants on a motion to dismiss. Moreover, "court[s] should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel," as here, so that such questions can "be explored and assayed in the light of actual facts." Wright & Miller, 5B FEDERAL PRACTICE AND PROCEDURE § 1357 (4th ed.)

The pleadings support an inference that Fleming's claims are not "so predominantly foreign as to be impermissibly extraterritorial." *Parkcentral*, 763 F.3d at 216. Defendants' fraud involved myriad misrepresentations made within the U.S. by U.S.-based actors, which were received within the U.S. by both Fleming and the state court, both of whom then acted within the U.S. in reliance on Defendants' misrepresentations, including through the closing of the parties' domestic transaction. Fleming thus "allege[d] substantial domestic contacts," *Giunta*, 893 F.3d at 82, which "make it plausible" that federal securities laws should apply, *Choi*, 890 F.3d at 68. Because plausibility is all that is required "before discovery," *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023), which may reveal additional pertinent domestic conduct, Fleming's claims "should not have been dismissed on extraterritoriality grounds," *Choi*, 890 F.3d at 68, based on

the court's "weighing" of "different factors," Tr. 103:21-104:1.  Whether foreign or domestic conduct predominates requires evaluating and comparing all of the facts, rendering it "a  matter properly determined on the basis of proof, which means on a summary judgment motion or at trial…, and not merely on the face of the pleadings."  Wright & Miller § 1357.

        **B.**      **The Court Overlooked Critical Domestic Conduct.**

Assuming *arguendo* that it was proper for the Court to weigh divergent factors in evaluating the pleadings rather than drawing all inferences in Fleming's favor, the Opinion nevertheless overlooked critical domestic conduct at the heart of Fleming's securities fraud claims in conducting that balancing.  While recognizing that James River submitted "a sworn affidavit" to the state court in support of its preliminary injunction motion, Opinion 18, the Court made no mention of Fleming's allegations that the affidavit—which was relied on by the state court as the only evidence submitted by James River—was replete with misrepresentations such that Defendants deceived the state court itself, causing the state court to compel Fleming to purchase securities in a domestic transaction as a direct result of Defendants' misrepresentations.  Opp.Br. 2, 4, 13-14, 17-18.  In short, this litigation "would not exist but for the role of a U.S. court" that itself was misled by the Defendants.  Tr. 110:14-19.  Fleming's allegation concerning Defendants' entirely domestic misrepresentations to that court, and the corrupting influence of those misrepresentations in procuring a domestic court order compelling the transaction to close, are entirely absent from the Opinion's discussion (at 18-19) of the state court litigation.

The Court's extraterritoriality analysis reasoned that "the parties were before a New York court only because of the [Agreement's] forum-selection clause."  *Id.* at 36.  That is true so far as it goes, but it does not address the domestic conduct that actually occurred as a result, including Defendants' misrepresentations that took place *after* the Agreement was executed forming the basis for Fleming's second securities fraud claim.  *See* Compl. ¶¶529-31.  Defendants made

misrepresentations in the U.S. that were received by a state court in the U.S, and relied upon in the U.S. by that state court, as a result of which the state court issued an order within the U.S. compelling the transaction at issue to close—which subsequently occurred in the U.S. upon James River's domestic transmission of further fraudulent misrepresentations in its closing certificate.

Unlike other allegations, that course of events did not "ping-pong[] between New York and Bermuda." Opinion 31. It was entirely domestic, and it was entirely unprecedented in any of the authority on which the Opinion relied. That it occurred here due to a forum selection clause does not negate the resulting conduct, which was "sufficient domestic activity" for the Court to have declined to dismiss Fleming's securities claims as "impermissibly extraterritorial." *In re Platinum*, 61 F.4th at 268. At minimum, Fleming's Count II—which is predicated on James River's misrepresentations to the state court—involves far more domestic conduct and turns on fewer foreign facts than Fleming's first cause of action involving only misrepresentations made to Fleming itself in order to induce Fleming to enter into the Agreement. At bottom, Fleming has alleged that James River engaged in domestic "deception which misled [the state court] and that this was in fact the cause of [Fleming's] claimed injury." *Vine*, 374 F.2d at 635. That "is exactly [w]hat [was] intended by the wrongdoer," yet the Opinion's analysis "ignores the simple fact that [Fleming] would never be in the position of a forced [purchaser] were it not for [that] fraud." *Id.*

Furthermore, the Court appears to have misapprehended a colloquy with counsel on the import of the state court litigation. The Opinion (at 36) states that "Fleming itself concedes" that a forum-selection clause does not render "an otherwise predominantly foreign transaction substantially domestic" within the ambit of federal securities laws. But the question posed was whether "a forum selection clause *alone*" could result in "a transaction that is not predominantly foreign," to which the undersigned responded that no "one factor *alone* would do it," Tr. 110:10-

10

15, because "no single fact or factor is dispositive," *id.* at 103:14-16.  To be clear, however, Fleming has not and does not concede that the Agreement's inclusion of a forum-selection clause somehow minimizes, let alone negates, the extensive domestic conduct at issue relating to the state court litigation.  To the contrary, those facts—which went unremarked upon in the Opinion— constituted a "significant contact with the U.S. that, again, is unprecedented in any case evaluating this extraterritoriality question." *Id.* at 110:17-19.[1]  Accordingly, Fleming respectfully submits that the Court should reconsider whether it has "allege[d] substantial domestic contacts," which is all that is necessary to "reject the argument that the Agreement is so predominantly foreign as to be impermissibly extraterritorial." *Giunta*, 893 F.3d at 82-83.

## CONCLUSION

For the foregoing reasons, the Court should grant reconsideration, deny dismissal of Fleming's securities claims as impermissibly extraterritorial, and resolve the remainder of the parties' briefed arguments by holding that Fleming has sufficiently pleaded its claims.

---

[1] The state court's domestic reliance on Defendants' misrepresentations distinguishes *Cavello Bay*, in which misrepresentations were sent by the defendants "from New York" to the plaintiffs "in Bermuda," where they were acted upon.  986 F.3d at 164.  *Cavello Bay* did not involve misrepresentations that were received or acted upon domestically.  The Opinion (at 36) also cites *Arco Cap. Corps. Ltd. v. Deutsche Bank A.G.* for the proposition that choice-of-law provisions are "irrelevant" to the "domestic-transaction inquiry."  949 F.Supp.2d 532, 541 (S.D.N.Y. 2013).  Yet *Arco* did not involve a forum-selection clause, nor any domestic judicial proceedings arising as a result.  Moreover, *Arco* sheds no light on the application of *Parkcentral*'s predominantly foreign test because it was decided one year before *Parkcentral*.

Dated: New York, New York
      August 14, 2025

                                      Respectfully submitted,

                                      GIBSON, DUNN & CRUTCHER LLP

                                      By: * /s/ Marshall King*

                                            Marshall King
                                          Reed Brodsky
                                          Akiva Shapiro
                                          Michael Nadler
                                          200 Park Avenue
                                          New York, New York 10166
                                          Tel:  (212) 351-4000
                                          RBrodsky@gibsondunn.com
                                          MKing@gibsondunn.com
                                          AShapiro@gibsondunn.com
                                          MNadler@gibsondunn.com

                                        *Attorneys for Plaintiff Fleming Intermediate*
                                        *Holdings LLC*

## <u>WORD COUNT CERTIFICATION</u>

I, Marshall King, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 that this memorandum of law complies with the word limit set forth in this Court's Local Civil Rule 6.3 because it contains 3,496  words, excluding the parts of the motion exempted from the word limit by Local Civil Rule 6.3.   In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: New York, New York
         August 14, 2025

<u>/s Marshall King</u>
Marshall King
