UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLEMING INTERMEDIATE HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JAMES RIVER GROUP HOLDINGS, LTD., FRANK D'ORAZIO, and SARAH DORAN,<br><br>Defendants. | No. 24-cv-5335 (JLR)<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD......................................................................................................................2

I.    THE COURT PROPERLY WEIGHED COMPETING FACTORS IN FINDING FLEMING'S CLAIMS PREDOMINANTLY FOREIGN ...................................................3

    A.    The Court Did Not Overlook Whether Multi-Factor Weighing Was Appropriate—And Fleming Waived The Argument ...............................................3

    B.    Binding Precedent Required The Court To Weigh Competing Factors At The Motion To Dismiss Stage ....................................................................................5

        1.    Every Second Circuit Case Assessing Whether Claims Are "Predominantly Foreign" Has Resolved The Issue On The Pleadings ..................................................................................................5

        2.    International Comity Supports Applying The Predominantly Foreign Inquiry At The Pleadings Stage.........................................................7

        3.    Fleming's Argument Was Already Rejected By The Supreme Court In *Tellabs* ..................................................................................8

II.    THE COURT PROPERLY CONSIDERED ALL DOMESTIC CONTACTS—FLEMING CANNOT RELITIGATE THESE DECIDED ISSUES ..................................9

    A.    The Court Did Not Overlook Any Alleged Domestic Contacts ............................9

    B.    Even If The Court Were To Reconsider Its Weighing Analysis, Fleming's Claims Would Still Be Predominantly Foreign .....................................10

CONCLUSION..............................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alix v. McKinsey & Co.*,
    739 F. Supp. 3d 172 (S.D.N.Y. 2024)..................................................................................4

*Allianz Glob. Inv'rs GmbH v. Bank of Am. Corp.*,
    2020 WL 2538394 (S.D.N.Y. May 19, 2020) ......................................................................4

*Analytical Survs., Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)............................................................................................2, 10

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)................................................................................................7

*Callahan Min. Corp. v. Comm'r*,
    428 F.2d 721 (2d Cir. 1970)................................................................................................7

*Cavello Bay Reinsurance Ltd. v. Shubin Stein*,
    986 F.3d 161 (2d Cir. 2021) ....................................................................................3, 5, 11

*Choi v. Tower Rsch. Cap. LLC*,
    890 F.3d 60 (2d Cir. 2018)..............................................................................................5, 6

*In the Matter of Energetic Tank, Inc.*,
    2020 WL 978257 (S.D.N.Y. Feb. 28, 2020).......................................................................3

*First New York Sec. LLC v. United Rentals Inc.*,
    391 F. App'x 71 (2d Cir. 2010) ..........................................................................................9

*Giunta v. Dingman*,
    893 F.3d 73 (2d Cir. 2018)......................................................................................5, 6, 10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)................................................................................................7

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021) ...............................................................................................9

*Moazzaz v. Met Life, Inc.*,
    2024 WL 2330751 (S.D.N.Y. May 22, 2024) .....................................................................4

*In re Monster Worldwide, Inc. Secs. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) ........................................................................................4

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ................................................................................................. 7, 11

*New York by James v. Red Rose Rescue*,
  771 F. Supp. 3d 311 (S.D.N.Y. 2025) ............................................................................. 6

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003) ........................................................................................... 2

*In re Platinum & Palladium Antitrust Litigation*,
  61 F.4th 242 (2d Cir. 2023) ............................................................................................ 5

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
  763 F.3d 198 (2d Cir. 2014) ........................................................................ 3, 5, 6, 7, 9, 11

*Schoolcraft v. City of New York*,
  298 F.R.D. 134 (S.D.N.Y. 2014) .................................................................................... 2

*Stoyas v. Toshiba Corp.*,
  896 F.3d 933 (9th Cir. 2018) .......................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .................................................................................................... 8, 9

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) ....................................................................................................... 6

*United States v. Barnes*,
  158 F.3d 662 (2d Cir. 1998) ........................................................................................... 4

*United States v. Polouizzi*,
  564 F.3d 142 (2d Cir. 2009) ........................................................................................... 6

*In re Volkswagen AG Sec. Litig.*,
  661 F. Supp. 3d 494 (E.D. Va. 2023) ............................................................................. 6

*Williams v. Binance*,
  96 F.4th 129 (2d Cir. 2024) ............................................................................................ 6

*Williams v. MTA Bus Co.*,
  2020 WL 4904058 (S.D.N.Y. Aug. 20, 2020) ............................................................... 4

*Williams v. MTA Bus Co.*,
  44 F.4th 115 (2d Cir. 2022) ............................................................................................ 4

**<u>Statutes / Rules</u>**

Fed. R. Civ. P. 12(b)(6)..................................................................................................5, 8

Fed. R. Civ. P. 59.............................................................................................................2

**PRELIMINARY STATEMENT**

Fleming continues its pattern of rehashing losing arguments. Having struck out before the New York Supreme Court, the Appellate Division, the Independent Accounting Firm, and now this Court, Fleming is back again with its meritless Motion for Reconsideration (Dkt. 75, "Mot.") of the Court's July 17, 2025 Opinion and Order (Dkt. 72, "Op.") granting Defendants' Motion to Dismiss. The Court's detailed and well-reasoned Opinion held that Fleming's claims were "so predominantly foreign as to be impermissibly extraterritorial" under controlling Second Circuit precedent.

Reconsideration is an extraordinary remedy reserved for intervening changes of controlling law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Fleming identifies none of these circumstances. Instead, Fleming now challenges the very approach it advocated at oral argument, where its counsel urged this Court to "look at the facts in their entirety and see which side weighs heavier on the scale." When the Court asked Fleming to confirm that binding precedent resolved these issues at the motion to dismiss stage, Fleming's counsel acknowledged the Court was "absolutely correct." Having lost that weighing exercise, Fleming now claims such weighing was improper.

Fleming advances two arguments: *first*, that courts cannot weigh competing domestic and foreign factors at the motion to dismiss stage, and *second*, that the Court overlooked "critical" domestic conduct. Both arguments fail. The Court did not overlook Fleming's first argument. Quite the opposite: The Court *itself* raised the issue *sua sponte* at oral argument, whereas Fleming waived the argument by failing to include it in its opposition brief and then conceded at oral argument that the Court was "absolutely correct" about binding Second Circuit precedent. That precedent required the Court to engage in the very weighing Fleming now challenges. As for

1

Fleming's second argument, the Court did not overlook any domestic contacts—Fleming is simply relitigating arguments the Court already considered and rejected.

Fleming's Motion is precisely the sort of "second bite at the apple" that the stringent reconsideration standard forbids. The Court should deny the Motion.

## LEGAL STANDARD

"It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). "Reconsideration of a court's prior order under Local Rule 6.3 or Rule 59 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources'" and the standard is "strict." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014).

Reconsideration is improper absent "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (citation and internal quotation omitted). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs.*, 684 F.3d at 52. "The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might 'materially have influenced its earlier decision.'" *Schoolcraft*, 298 F.R.D. at 136.

**ARGUMENT**

I. **THE COURT PROPERLY WEIGHED COMPETING FACTORS IN FINDING FLEMING'S CLAIMS PREDOMINANTLY FOREIGN**

   A. **The Court Did Not Overlook Whether Multi-Factor Weighing Was Appropriate— And Fleming Waived The Argument**

Fleming accuses the Court of "overlooking" whether it was proper to "weigh facts relevant to the predominantly foreign inquiry on a motion to dismiss." Mot. 4 (cleaned up). The Court did not "overlook" anything. To the contrary, it was the Court that raised this issue *sua sponte* during oral argument, after Fleming urged the Court to engage in just this sort of multi-factor weighing. Fleming's counsel explained:

> *Parkcentral* further made clear that, in evaluating that second step, the courts need to carefully make their way with careful attention to the facts of each case…. ***You have to look at the facts in their entirety and see which side weighs heavier on the scale***.

July 2, 2025 Hearing Transcript ("Tr.") 103:9-20 (emphasis added). The Court then noted "all of these cases—*Cavello Bay*, *Parkcentral*—all of these cases are motion to dismiss cases," and asked Fleming's counsel to confirm he "did not disagree" that the Court could engage in multi-factor weighing on a motion to dismiss. Tr. 103:21-104:1. Fleming's counsel acknowledged the Court was "absolutely correct" that binding Second Circuit precedent resolved these issues on the pleadings. Tr. 104:4-6.

Given Fleming's concession, the Court had no reason to address this procedural question in its Opinion. *See In the Matter of Energetic Tank, Inc.*, 2020 WL 978257, at *3 (S.D.N.Y. Feb. 28, 2020) (holding court had not "overlooked" argument where it had "inquired as to the application of different law to liability and damages at oral argument, but the Parties agreed that it was a 'package'").

3

The only party that overlooked anything was Fleming—by omitting this argument from its opposition to the Motion to Dismiss. *See* Dkt. 58. Fleming thus "waived this argument when it failed to raise it in its [brief], and the motion for reconsideration is properly denied for that reason alone." *Allianz Glob. Inv'rs GmbH v. Bank of Am. Corp.*, 2020 WL 2538394, at *1 (S.D.N.Y. May 19, 2020); *see Williams v. MTA Bus Co.*, 44 F.4th 115, 136 n.17 (2d Cir. 2022) (affirming denial of motion for reconsideration where district court, in denying reconsideration, held "argument was waived by [party's] 'fail[ure] to raise [the] argument in his summary-judgment briefing'" (quoting *Williams v. MTA Bus Co.*, 2020 WL 4904058, at *2 (S.D.N.Y. Aug. 20, 2020))).

Counsel's offhand remarks at oral argument (Mot. 4-5) do not save the argument from waiver. After conceding that binding precedent resolved these issues on the pleadings, Fleming's counsel offered speculative musings about what he thought the law *should* be, calling it "a question of fact that a jury should be finding." Tr. 104:2-17. Tellingly, Fleming offers no explanation for why this argument—which its counsel claimed he had "actually thought a lot about" and found "very interesting" (Tr. 104:2-3)—appeared nowhere in its opposition brief. Arguments "raised for the first time at oral argument" are "waived." *In re Monster Worldwide, Inc. Secs. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008); *see Alix v. McKinsey & Co.*, 739 F. Supp. 3d 172 (S.D.N.Y. 2024) ("[T]his argument … is too late because Alix failed to raise it until oral argument.").[1]

---

[1] Fleming's cited cases (Mot. 5) do not help it avoid waiver. In *Moazzaz*, the court actually addressed the issue in its opinion—the very thing Fleming complains this Court failed to do—and the plaintiff had simply not addressed the issue at all (unlike Fleming, which advocated the opposite position at oral argument). *See Moazzaz v. Met Life, Inc.*, 2024 WL 2330751, at *1 (S.D.N.Y. May 22, 2024). *Barnes* involved the Second Circuit considering an argument in its initial opinion, not a motion for reconsideration, and the party there "flagged the argument in a way that could not be missed"—unlike Fleming, which expressly urged the opposite position. *See United States v. Barnes*, 158 F.3d 662, 673 (2d Cir. 1998).

4

### B. Binding Precedent Required The Court To Weigh Competing Factors At The Motion To Dismiss Stage

Even if the Court were to reconsider whether multi-factor weighing was appropriate, controlling authority required exactly the analysis the Court conducted.

#### 1. Every Second Circuit Case Assessing Whether Claims Are "Predominantly Foreign" Has Resolved The Issue On The Pleadings

Every Second Circuit case assessing the "predominantly foreign" inquiry has resolved the issue on the pleadings—exactly as this Court did. In *Parkcentral*, the court engaged in multi-factor weighing on a Rule 12(b)(6) motion and concluded that claims involving securities-based swap agreements referencing German securities were "so predominantly German as to compel the conclusion that the complaints fail to invoke § 10(b) in a manner consistent with the presumption against extraterritoriality." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE,* 763 F.3d 198, 216 (2d Cir. 2014). The court emphasized that "courts must carefully make their way with careful attention to the facts of each case." *Id.* at 217. In *Cavello Bay*, the court weighed the "main link to the United States" against the otherwise predominantly foreign components and determined the claims were impermissibly extraterritorial on a Rule 12(b)(6) motion. *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 167 (2d Cir. 2021). And in *Giunta*—Fleming's principal authority—the court explicitly "weighed those [substantial domestic] contacts against the 'foreign components of the dispute.'" Op. 34 (citing *Giunta v. Dingman*, 893 F.3d 73, 82-83 (2d Cir. 2018)). Each court conducted precisely the sort of multi-factor analysis on a Rule 12(b)(6) motion that Fleming now claims is impermissible.[2]

---

[2] Fleming's invocations of other Second Circuit authority (Mot. 8 & 10) are inapposite. *In re Platinum & Palladium Antitrust Litigation*, a CEA case, reversed because the district court rejected allegations of domestic activity "as implausible" rather than crediting them. 61 F.4th 242, 268 (2d Cir. 2023). Here, the Court fully credited Fleming's domestic allegations and properly found them insufficient under *Cavello Bay*. *See* Op. 17-19, 28-36. *Choi* (also a CEA case) and *Williams* merely reversed district courts' findings that domestic transactions were inadequately

Fleming's mischaracterization of *Giunta* is particularly egregious. Fleming contends that *Giunta* stands for the proposition that "'alleg[ing] substantial domestic contacts[]' … is all that is necessary" to defeat extraterritoriality. Mot. 11 (quoting *Giunta*, 893 F.3d at 82-83). As this Court correctly noted, *Giunta* found nothing of the sort. Op. 34. Instead, *Giunta* weighed substantial domestic contacts against foreign components and concluded that claims were not predominantly foreign only because "the ***only foreign component*** present in the formation of the agreement was the eventual registration of the shares with the appropriate Bahamian authorities." *Giunta*, 893 F.3d at 82-83 (emphasis added). Moreover, both parties in *Giunta* were U.S. citizens—a critical distinction this Court properly noted. Op. 34.

Fleming notes that courts *outside the Second Circuit* have criticized *Parkcentral*'s "predominantly foreign" inquiry. Mot. 6 (citing *In re Volkswagen AG Sec. Litig.*, 661 F. Supp. 3d 494, 514 (E.D. Va. 2023); *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 950 (9th Cir. 2018)). But "[t]his Court is bound to apply Second Circuit precedent 'unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or [Second Circuit].'" *New York by James v. Red Rose Rescue*, 771 F. Supp. 3d 311, 340 (S.D.N.Y. 2025) (quoting *United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009)).

Fleming's purported "controlling caselaw" that the Court "overlooked" (Mot. 7) has nothing to do with extraterritoriality, much less the "predominantly foreign" inquiry. *TSC Industries* addressed the *materiality* standard, requiring fact-intensive assessment of inferences a "reasonable shareholder" would make. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). Similarly, Fleming's other cited cases involved entirely different legal inquiries. *See*

---

pled—neither conducted any "predominantly foreign" analysis. *See Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 63 (2d Cir. 2018); *Williams v. Binance*, 96 F.4th 129, 136-37 (2d Cir. 2024).

6

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 187 (2d Cir. 2012) (existence of conspiracy); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 174 (2d Cir. 2015) (sufficiency of fraud allegations). And despite Fleming's misleading implication that *Callahan* holds extraterritoriality to be a mixed question of law and fact (Mot. 7), that case actually addressed "what constitutes an equitable apportionment of the depletion allowance" under the Internal Revenue Code—not extraterritoriality. *Callahan Min. Corp. v. Comm'r*, 428 F.2d 721, 726 (2d Cir. 1970). Fleming does not identify a single case holding that extraterritoriality analysis is improper on the pleadings—because none exists.

### 2. International Comity Supports Applying The Predominantly Foreign Inquiry At The Pleadings Stage

International comity—and Congress's desire to preserve it—demands application of the "predominantly foreign" inquiry at the motion to dismiss stage. *See Parkcentral*, 763 F.3d at 216 (rejecting notion that Congress could have "intended [] *sub silentio*" to bring cases "obviously implicat[ing] the incompatibility of U.S. and foreign laws" within the scope of § 10(b)).

Fleming's suggestion that the predominantly foreign inquiry should instead be resolved "on a summary judgment motion or at trial" (Mot. 9) would create the precise sort of "potential for regulatory and legal overlap and conflict" *Parkcentral* sought to avoid. 763 F.3d at 216. Had Fleming's claims survived Defendants' Motion to Dismiss, the parties would have sought discovery into numerous matters subject to Bermuda regulation—including Fleming's claims regarding damage to its relationship with the Bermuda Monetary Authority ("BMA") (AC ¶ 151)—and summary judgment and trial would have been replete with questions of Bermuda law and regulation, even amidst "ongoing" BMA regulation of relevant issues.[3] This is exactly the

---

[3] Op. 30 (noting Fleming's allegation that "JRG Re continues to work through these issues with [the BMA] … although the ultimate outcome of that ongoing process is not yet known at this time" (quoting AC ¶ 368)); *cf. Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 284 n.12

foreign entanglement Congress sought to avoid—and that the Second Circuit's "predominantly foreign" inquiry avoids, when applied on a motion to dismiss.

### 3. Fleming's Argument Was Already Rejected By The Supreme Court In *Tellabs*

Fleming's core argument—that courts cannot weigh competing inferences at the pleadings stage because it would usurp the fact-finder's role—was squarely rejected by the Supreme Court in *Tellabs* in the context of the scienter requirement for securities fraud. There, the plaintiff made the same argument Fleming advances here: that on a Rule 12(b)(6) motion to dismiss, courts should consider only inferences supporting the plaintiff's claims and that any comparative weighing of opposing inferences improperly usurps the jury's role. The plaintiff argued that to determine whether allegations gave rise to a "strong inference" of scienter, courts should ask only whether "a reasonable person could infer that the defendant acted with the required intent"—without considering competing inferences that might undermine scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). The plaintiff claimed that weighing competing inferences would be "a usurpation of the jury's role." *Id.* at 326.

The Supreme Court emphatically rejected this position. It held that when "faced with a Rule 12(b)(6) motion to dismiss," courts "must take into account plausible opposing inferences" and "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 322-24. The Supreme Court explained that courts "must consider the complaint in its entirety" and evaluate "whether all of the facts alleged, taken collectively" support the claim—not just those allegations favoring the plaintiff. *Id.* at 322-23.

---

(Stevens and Ginsburg, JJ., concurring) (noting greater "threat to international comity" posed by private litigants).

8

This requirement applies across all motions to dismiss a § 10(b) action. As the Second Circuit has confirmed, "[i]n considering a motion to dismiss a section 10(b) action, [the court] accept[s] all factual allegations in the complaint as true and ***must consider the complaint in its entirety***." *First New York Sec. LLC v. United Rentals Inc.*, 391 F. App'x 71, 72 (2d Cir. 2010) (emphasis added). Thus, "[t]he proper question is whether there is a permissible relevant inference from '*all* of the facts alleged, taken collectively,' not whether an inference is permissible based on 'any individual allegation, scrutinized in isolation.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Tellabs*, 551 U.S. at 323).

Critically, the Supreme Court rejected the argument that such comparative weighing constitutes improper "usurpation of the jury's role," holding instead that this analysis "does not impinge upon the Seventh Amendment right to jury trial." *Tellabs*, 551 U.S. at 326-37.

Fleming's argument that weighing domestic against foreign factors presents a classic "question of fact that a jury should be finding" (Mot. 6) is precisely the sort of argument the Supreme Court rejected in *Tellabs*. The same comparative weighing that *Tellabs* requires for scienter, *Parkcentral* requires for extraterritoriality—both at the motion to dismiss stage.

## II.  THE COURT PROPERLY CONSIDERED ALL DOMESTIC CONTACTS— FLEMING CANNOT RELITIGATE THESE DECIDED ISSUES
### A. The Court Did Not Overlook Any Alleged Domestic Contacts

Fleming falsely claims the Court did "not mention" the "alleged substantial domestic contact giving rise to [Fleming's] federal claims." Mot. 5. This is demonstrably wrong—and a transparent attempt to relitigate arguments Fleming lost. The Court directly addressed Fleming's state court litigation arguments, including the affidavit that Fleming now claims was overlooked. *See* Op. 18 (noting affidavit submitted to state court and Fleming's allegations that affidavit's representations were false); *id.* 31 (noting Fleming's allegation that "James River made

9

misrepresentations" from the United States); *id.* 36 (noting purported *sui generis* nature of state court-ordered closing). The Court properly accepted these allegations as true for purposes of Defendants' motion to dismiss and in no way overlooked them. Instead of overlooking them, the Court analyzed these allegations under controlling Second Circuit precedent and correctly concluded they were insufficient:

> In arguing that section 10(b) extends to the underlying conduct alleged in the Amended Complaint, **Fleming relies on inapposite cases that either involved U.S. parties or more attenuated foreign ties**. At oral argument, Fleming relied heavily on **Giunta v. Dingman** to argue that there are "<u>substantial domestic contacts</u>" here such that the invocation of section 10(b) is not impermissibly extraterritorial. But **Fleming highlights selective language from Giunta while overlooking the factual distinctions between that case and this action**. In *Giunta*, both parties to the underlying transaction were U.S. citizens. **Moreover, although Giunta took note of "<u>substantial domestic contacts</u>," it weighed those contacts against the "foreign components" of the dispute**: there, "[t]he only foreign component present in the formation of the [a]greement was the eventual registration of the shares with the appropriate Bahamian authorities, an act that [defendant] agreed to undertake per the [a]greement." **The foreign components of the parties' SPA here are not so sparse.** Among other things, there are **foreign parties on both sides of the transaction**, and the **SPA incorporates James River's affirmative representations regarding JRG Re's compliance with Bermuda law and regulations**.

Op. 34 (emphasis added) (citation omitted). Fleming is not pointing to overlooked arguments—it is relitigating the very domestic contact argument the Court already considered and properly rejected. Reconsideration motions do not permit this sort of "second bite at the apple." *Analytical Survs.*, 684 F.3d at 52.

### B. Even If The Court Were To Reconsider Its Weighing Analysis, Fleming's Claims Would Still Be Predominantly Foreign

Even if the Court were to reconsider its weighing of foreign and domestic contacts, the result would be the same. Fleming's arguments fail on multiple levels.

*First*, Fleming's attempt to distinguish Count II (Post-Signing Representations) at the expense of Count I (Pre-Signing Representations) ignores that Count II involves even more extensive foreign regulatory entanglements. Fleming's claim that Count II "turns on fewer foreign

10

facts" (Mot. 10) is demonstrably false. In fact, Count II—not Count I—implicates the post-signing and post-closing foreign regulatory entanglements that led this Court to conclude "[t]his case introduces the very 'potential for incompatibility between U.S. and foreign law' that the courts warned of in *Morrison*, and later, *Parkcentral*." Op. 30. These include the alleged "illegal payments … in February 2024," an alleged Material Adverse Effect that "depends at least in part on finding that JRG Re violated Bermudan laws and regulations," alleged BMA determinations that JRG Re "repeatedly violated Bermudan law," and "ongoing … parallel foreign regulatory proceedings pertaining to the very conduct alleged herein." *Id.*

**Second**, Fleming cannot explain why the location of the alleged misrepresentations should override the predominantly foreign nature of its claims. Whether Fleming was deceived by domestic misrepresentations or the state court was similarly "misled" (Mot. 10), both scenarios present what this Court correctly identified as "vestiges from the Second Circuit's 'now-defunct conduct and effects test.'" Op. 32 (quoting *Cavello Bay*, 986 F.3d at 167). *Cavello Bay* explicitly rejected similar arguments that "some fraudulent acts took place in the United States." Op. 33.

**Third**, Fleming's argument that Defendants' alleged fraud against the state court constitutes critical domestic conduct cannot transform its otherwise predominantly foreign claims into domestic ones. Fleming contends that because Defendants allegedly deceived the New York state court into ordering the transaction to close, this domestic judicial proceeding should tip the scales in favor of domesticity. Mot. 10-11. As the Court correctly concluded, "the parties were before a New York court only because of the SPA's forum-selection clause." Op. 36. And Fleming conceded that "forum-selection and choice-of-law clauses do not render an otherwise predominantly foreign transaction substantially domestic." *Id.* The state court's order "alone"

11

(Mot. 10-11 (quoting Tr. 110:10-15)) cannot save Fleming's "otherwise predominantly foreign" claims.  *See* Op. 36.

## **CONCLUSION**

Defendants respectfully request that the Court deny Fleming's Motion.

DATED:   New York, New York
         August 28, 2025

                              QUINN EMANUEL URQUHART &
                              SULLIVAN, LLP

                 By:   */s/ Michael B. Carlinsky*
                       Michael B. Carlinsky
                       Renita Sharma
                       Todd Beattie
                       295 Fifth Avenue
                       New York, NY 10016
                       Tel: (212) 849-7000
                       Fax: (212) 849-7100
                       michaelcarlinsky@quinnemanuel.com
                       renitasharma@quinnemanuel.com
                       toddbeattie@quinnemanuel.com

                       *Attorneys for Defendants James River Group Holdings, Ltd., Frank D'Orazio, and Sarah Doran*

## ATTORNEY CERTIFICATION PURSUANT TO RULE 3(C) OF THE INDIVIDUAL RULES OF PRACTICE IN CIVIL CASES OF JUDGE ROCHON

I, Michael B. Carlinsky, an attorney duly admitted to practice law before this Court, hereby certify pursuant to this Court's Local Civil Rule 7.1 that this memorandum of law complies with the word limit set forth in Local Civil Rule 6.3 because it contains 3,496 words, excluding the parts of the motion exempted from the word limit under Local Civil Rule 6.3.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

DATED:   New York, New York
         August 28, 2025

                                        */s/ Michael B. Carlinsky*
                                        Michael B. Carlinsky