UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FLEMING INTERMEDIATE HOLDINGS LLC,

                       Plaintiff,

-against-

JAMES RIVER GROUP HOLDINGS, LTD., FRANK D'ORAZIO, and SARAH DORAN,

                       Defendants.

Case No. 1:24-cv-05335 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

    This case involved a transaction between two foreign entities. Plaintiff Fleming Intermediate Holdings, LLC ("Fleming") is a Cayman Islands insurance company; James River Group Holdings, Ltd. ("James River") is a Bermuda LLC. Fleming and James River entered into a stock purchase agreement ("SPA" or "Agreement") in which Fleming agreed to acquire James River's wholly owned subsidiary, JRG Re, through an equity purchase. As closing neared, Fleming noticed certain irregularities in JRG Re's finances and accused James River of breaching the SPA; in response, James River sought and obtained an order from a New York state court compelling Fleming to participate in closing. Fleming allegedly learned afterward that James River had made material misrepresentations in connection with the SPA. Fleming then brought this action, which included claims under section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder. *See generally* Dkt. 38 ("Amended Complaint" or "AC").

    James River moved to dismiss the Amended Complaint, and, on July 17, 2025, this Court granted the motion. *See generally Fleming Intermediate Holdings LLC v. James River Grp. Holdings, Ltd.* (*Fleming I*), No. 24-cv-05335 (JLR), 2025 WL 1993478 (S.D.N.Y. July 17,

2025). On August 14, 2025, Fleming moved for reconsideration of that decision, *see* Dkt. 74, and filed an accompanying memorandum of law, *see* Dkt. 75 ("Br."). James River filed an opposition, *see* Dkt. 76 ("Opp."), and Fleming filed a reply, *see* Dkt. 77 ("Reply"). Fleming's motion is thus fully briefed, and, for the following reasons, it is DENIED.[1]

## BACKGROUND

In *Fleming I*, this Court found that Fleming's section 10(b) claims were impermissibly extraterritorial and granted James River's motion to dismiss. *Fleming I*, 2025 WL 1993478, at *10. In reaching that result, the Court followed the Second Circuit's guidance in *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 (2d Cir. 2014) and *Cavello Bay Reinsurance Ltd. v. Stein*, 986 F.3d 161 (2d Cir. 2021), by evaluating Fleming's pleadings to determine, first, whether its claims involved a domestic transaction and, second, whether its claims were nevertheless "so predominantly foreign as to be impermissibly extraterritorial." *Fleming I*, 2025 WL 1993478, at *11 (quoting *Parkcentral*, 763 F.3d at 216). The Court found that Fleming had adequately pleaded the first requirement, *see id.* at *11-13, but not the second, *id.* at *13-16.

In assessing whether Fleming's claims were "predominantly foreign," the Court looked to the facts pleaded in the Amended Complaint and found that they involved both domestic and foreign factors. The Court summarized the claims' domestic factors as fitting into three categories of allegations: "(i) [Fleming and James River] executives operated out of the United States; (ii) U.S.-based entities financed the transaction; and (iii) some of the negotiations

---

[1] The parties requested oral argument via notation on their briefs. The Court declines this request because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well withing its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

2

occurred in the United States." *Id.* at *14. As to the claims' foreign factors, the Court noted that (1) "the underlying transaction involves foreign parties, a private agreement, and shares of a privately held Bermudan company not traded on any exchange"; (2) many of the representations identified by Fleming "invoke Bermuda law, Bermuda regulations, or the [Bermuda Monetary Authority ("BMA")] in some respect," such that "to find a material misrepresentation, the Court would first have to find a predicate violation of" that foreign legal system; and (3) there were ongoing "parallel foreign regulatory proceedings pertaining to the very conduct alleged herein" that further called into question the compatibility of U.S. and foreign law. *Id*. at *13.

The Court reasoned that the first set of foreign factors "alone weigh[ed] in favor of finding that Fleming's claim is predominantly foreign," *id.*, and that the domestic factors "d[id] not suffice . . . to overcome the substantial foreign connections" because "other material details of the transaction such as the parties to the transaction and the foreign nature of the security interests themselves are connected to Bermuda," *id.* at *14. The Court further ruled that the parties' transaction was not rendered "substantially domestic" by the fact that a state court had compelled its closing, because "the parties were before a New York court only because of the SPA's forum-selection clause," and a forum-selection clause does not render domestic "an otherwise predominantly foreign transaction." *Id.* at *16.

Fleming now asks the Court to reconsider *Fleming I* for two reasons. First, Fleming contends that the Court should not have weighed "competing facts" in determining whether "domestic or foreign factors predominate[d]" its transaction with James River, and that in so weighing the Court failed to "draw[] all reasonable inferences in Fleming's favor as required at the pleading stage." Br. at 1. Second, Fleming contends that the Court overlooked "substantial domestic conduct" rendering its claims "not impermissibly extraterritorial" by "mak[ing] no

3

mention" of the fact that the state court's order relied on James River's in-court (and therefore domestic) misrepresentations. *Id.*

## DISCUSSION

"A court will grant reconsideration when a movant demonstrates 'an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.'" *Williams v. Segura*, No. 23-cv-02936 (JLR) (HJR), 2025 WL 2914115, at *1 (S.D.N.Y. Oct. 14, 2025) (quoting *Columbo v. Philips Bryant Park LLC*, No. 22-cv-00775 (RA), 2025 WL 1043685, at *1 (S.D.N.Y. Apr. 8, 2025)). "'The standard for granting a motion for reconsideration is strict,' and therefore such a motion 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Hurlock v. Kelsier Labs, LLC*, No. 25-cv-03891 (JLR), 2025 WL 3041917, at *1 (S.D.N.Y. Oct. 31, 2025) (quoting *Abadi v. NYU Langone Health Sys.*, 714 F. Supp. 3d 387, 390 (S.D.N.Y. 2024)). For that reason, arguments "raised for the first time in [a] motion for reconsideration . . . [are] not properly presented to the district court." *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015). Rather, the party seeking reconsideration must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Lewis v. Gov't of England & United Kingdom*, No. 22-cv-10792 (JLR), 2023 WL 3483992, at *1 (S.D.N.Y. Apr. 5, 2023) (quoting *Schoolcraft v. City of New York*, 248 F. Supp. 3d 506, 508 (S.D.N.Y. 2017)). Whether to grant a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61-62 (2d Cir. 1986)).

## I. Weighing Competing Facts to Determine Predominance

Fleming begins with the question of whether a court may, on a motion to dismiss, weigh competing factors to determine whether foreign factors predominate a transaction. As a threshold matter, the Court must first determine whether this question is properly raised on reconsideration. The Court finds that it is not.

Fleming did not address this question in its briefing on James River's motion to dismiss, and that fact alone counsels against the Court taking it up on reconsideration. *See Phillips*, 775 F.3d at 544; *accord Elliott v. Cartagena*, No. 19-cv-01998 (NRB), 2025 WL 1455761, at *5 (S.D.N.Y. May 20, 2025). Fleming nevertheless seeks reconsideration because the Court asked, at oral argument, whether it could weigh "predominantly foreign" factors at the motion to dismiss stage, Fleming responded, and yet (according to Fleming) the Court did not address that issue in its opinion. Br. at 4-5. James River, too, notes that the Court raised the issue *sua sponte*, but contends that this only underscores Fleming's failure to raise, and thus waiver of, the argument. Opp. at 3-4. The Court agrees with James River.

"[A] motion for reconsideration is an improper forum" to raise an argument that was not mentioned "until oral argument." *Crippen v. Town of Hempstead*, No. 07-cv-03478 (JFP) (ARL), 2013 WL 2322874, at *2 n.1 (E.D.N.Y. May 22, 2013). The parties agree that, at oral argument, it was the Court that questioned the permissibility of weighing these factors on a motion to dismiss. The Court did so because it understood Fleming's argument to be that the Court *should* engage in exactly that weighing analysis:

> [Fleming's counsel]: . . . The takeaway from that instruction from the Second Circuit [in *Parkcentral*] is no single fact or factor is dispositive. . . . No single fact resolves a question. **You have to look at the facts in their entirety and see which side weighs heavier on the scale**.

> THE COURT: **And you don't disagree that I can do that on a motion to dismiss?** I know there are facts that I'm weighing, but all of these cases — *Cavello Bay*, *Parkcentral* — all of these cases are motion to dismiss cases, so the assessment is made, even though there are different factors to evaluate, based on what's pled in the complaint.
>
> [Fleming's counsel]: It's a very interesting question, your Honor. It's something I've actually thought a lot about. You're absolutely correct that these cases were decided on motions to dismiss, or at least some of them were — *Parkcentral* was, *Cavello Bay* was — **but whether or not something is predominant or not sounds to me like it's really a question of fact that a jury should be finding. Again, I don't know that anybody made that argument in any of those cases, but which side weighs heavier on the scale, again, sounds to me like a question of fact for the jury**. It's the same as, is something reasonable or not? There's some facts pointing one way and facts pointing the other way. Reasonable minds can differ. That's a classic question of fact that should not be decided on a motion to dismiss. Again, I don't know that anybody pointed that out in either of those cases; certainly, neither case addressed the question.

Tr. 103:14-104:17 (emphasis added).

Fleming's responses to the Court's inquiry did not preserve its argument for purposes of a reconsideration motion. For one, Fleming did not take a definitive position on the Court's weighing question. Instead, Fleming twice hazarded that it "sounds . . . like" a jury question, twice said that "I don't know that anybody" raised the question in the Second Circuit cases discussed before concluding that "neither case addressed the question," and compared the question to the "classic question of fact" presented by a reasonability standard. *Id*. 104:2-17; *cf.* Reply at 1 (arguing that Fleming gave "direct answers" to the Court's question, "has consistently argued" that predominance is a "classic question of fact," and stated that the "issue was not addressed" by the Second Circuit). Moreover, Fleming provided no authority to support these suppositions. To the contrary, Fleming conceded that two binding Second Circuit opinions had compared "different factors" concerning foreign and domestic aspects of a transaction and made a predominance determination on the defendant's motion to dismiss. Tr. 103:21-104:6. Unsupported, noncommittal arguments such as these, made for the first time at oral argument, are not properly before the Court on reconsideration. *See In re Energetic Tank, Inc*., No. 18-cv-

6

01359 (PAC) (RWL), 2020 WL 978257, at *5 n.8 (S.D.N.Y. Feb. 28, 2020) (holding that it is "surely not grounds for reconsideration" where issue was raised for the first time as "an uncertain suggestion at oral argument" by co-counsel); *EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, No. 18-cv-01047 (PGG), 2020 WL 3488037, at *2 (S.D.N.Y. June 26, 2020) (declining to reconsider "fleeting" argument raised in opposition brief's footnote and noting that "a motion for reconsideration is not a game of 'gotcha'" (quoting *Associated Press v. U.S. Dep't of Def.*, 410 F. Supp. 2d 147, 153 (S.D.N.Y. 2006))).

Fleming does not cite cases that instruct otherwise. *See* Br. at 4-5 (first citing *Moazzaz v. Met Life, Inc.*, No. 19-cv-10531 (JPO), 2024 WL 2330751 (S.D.N.Y. May 22, 2024); and then citing *United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998)). In *Moazzaz*, the court entertained a reconsideration motion on an issue the court had raised *sua sponte*, but the parties *had* addressed that issue in their briefs — they had just done so incorrectly. *See* 2024 WL 2330751, at *1 (explaining that "the [c]ourt addressed the issue of whether [an individual defendant] was an 'employer' under the [relevant statutes] *sua sponte* in its summary judgment opinion because neither side had correctly stated or applied the standard for individual liability under those statutes"). And in *Barnes*, the defendant challenged the calculation of his mandatory minimum sentence for the first time at oral argument, but by doing so he "flagged the argument in a way that could not be missed" and alerted the court to the possibility that the sentence imposed was not "authorized by law." 158 F.3d at 673. Fleming's equivocal statements at oral argument do not have the same effect, do not implicate the same liberty interests as the defendant's arguments in *Barnes*, and as a result do not "justify the exercise of [the Court's] discretion," *id.*, that the *Barnes* court found appropriate. Moreover, *Barnes* concerned the preservation of an argument for appellate review, not for purposes of a reconsideration motion before a district court. *Id*. at 672.

7

Fleming's failure to include its weighing argument in opposition to James Rivers' motion to dismiss, and Fleming's subsequent failure to raise or even squarely address the issue during oral argument, constitutes waiver for purposes of the present reconsideration motion. Counsel's musing at oral argument that he had "thought a lot about the issue" only underscores that Fleming could have raised the argument earlier, and that its failure to do so amounts to waiver. *See Cartagena*, 2025 WL 1455761, at *5. Fleming's motion to reconsider this question can be denied on this basis alone.

Even treating the argument as preserved for evaluation on the merits, the Court will not reconsider its prior ruling on this basis.

Fleming first asserts that the Court "overlooked" whether predominance can be determined on a motion to dismiss. *See* Br. at 1. That is inaccurate. The Court held in no uncertain terms that "whether [Plaintiff's] claims are sufficiently domestic under *Morrison* 'is a merits question' that properly is considered on a motion to dismiss under Rule 12(b)(6)." *Fleming I*, 2025 WL 1993478, at *11 (alteration in original) (quoting *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, No. 20-cv-03135 (LAK), No. 20-cv-03898 (LAK), 2022 WL 4539119, at *5 (S.D.N.Y. Sept. 28, 2022), *modified on other grounds*, 2022 WL 19037215 (S.D.N.Y. Dec. 7, 2022)). And in examining the pleadings to answer that question, the Court was expressly adhering to two binding Second Circuit cases that had done the same: *Parkcentral* and *Cavello Bay*. *See id.* at *14 ("The Second Circuit's binding decision in *Cavello Bay*, which invokes *Parkcentral*'s reasoning, guides the Court's findings given the close factual parallels to the case at hand."); *see also Parkcentral*, 763 F.3d at 216 ("[W]e think that the relevant actions in this case are so predominantly German as to compel the conclusion that the complaints fail to invoke § 10(b) in a manner consistent with the presumption against extraterritoriality."); *Cavello Bay*, 986 F.3d at 167 (listing pleaded domestic factors and concluding that they are "not enough" to

overcome transaction's foreign predominance). Therefore, the Court did not overlook this question.

Next, Fleming cites to "controlling caselaw" that, it says, demonstrates the Court's error in weighing the pleaded facts to determine foreign predominance. Br. at 6-9. This caselaw is not on point. Fleming first contends, quoting *Callahan Mining Corp. v. C.I.R.*, 428 F.2d 721 (2d Cir. 1970), that extraterritoriality "presents a 'mixed question of fact and law'" that should be reserved for a jury. *Id.* at 7 (alteration adopted). But *Callahan*'s mixed question was not whether a statute could be extraterritorially applied — it was whether the deduction allotment that the taxpayer sought was "equitable" within the meaning (and requirements) of the Internal Revenue Code. *Callahan*, 428 F.2d at 726. That has no bearing on how the Court should approach extraterritoriality analyses on a motion to dismiss. Nor is *Williams v. Binance*, 96 F.4th 129 (2d Cir. 2024), on point; *Williams* held only that the "predominance" required to certify a class under Federal Rule of Civil Procedure 23(b)(3) should be "decided after the motion to dismiss stage." *Id.* at 145. That holding does not address the predominance of factors required to render a securities transaction sufficiently domestic for purposes of section 10(b).

Fleming further argues that the Second Circuit has "repeatedly reversed dismissals of claims as extraterritorial where 'substantial domestic contacts' have been adequately alleged" and where "'sufficient domestic activity' has been pleaded." Br. at 8 (first quoting *Giunta v. Dingman*, 893 F.3d 73, 82 (2d Cir. 2018); and then quoting *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 268 (2d Cir. 2023)); *see also id.* (first citing *Williams*, 96 F.4th at 136-41; and then citing *Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 68 (2d Cir. 2018)). But the Second Circuit can reverse the dismissal of *any* claim where it finds that the allegations are adequately pleaded and sufficiently state a claim, given that it reviews such a dismissal *de novo*. *See, e.g.*, *CompassCare v. Hochul*, 125 F.4th 49, 56 (2d Cir. 2025). And the specific reversals that

9

Fleming cites do not hold, or even suggest, that the Court should not determine foreign predominance on a motion to dismiss. To the contrary, as the Court explained in *Fleming I*, the Second Circuit made just that determination in *Giunta*, and weighed competing facts to do so. "[A]lthough *Giunta* took note of 'substantial domestic contacts,' it weighed those contacts against the 'foreign components' of the dispute: there, 'the *only* foreign component present in the formation of the agreement was the eventual registration of the shares with the appropriate Bahamian authorities, an act that defendant agreed to undertake per the agreement.'" *Fleming I*, 2025 WL 1993478, at *15 (alterations adopted) (quoting *Giunta*, 893 F.3d at 82-83). The fact that *Giunta* does not "discuss[] any such balancing" explicitly, Reply at 4, does not mean that the court did not conduct it, or that it is not permitted. *Williams* and *Choi*, which Fleming also cites, are inapplicable, because they concerned only the "domestic transaction" prong of *Morrison* — not the predominance prong, which is the contested issue here. *See Williams*, 96 F.4th at 139 (holding that plaintiffs "adequately alleged domestic transactions"); *Choi*, 890 F.3d at 68 (holding that plaintiffs adequately pleaded domestic transactions by alleging that they "incurred irrevocable liability for their . . . trades" in Illinois). And in *Platinum*, the Second Circuit did not pass upon the district court's weighing foreign and domestic factors against each other, but rather disapproved of the district court's outright rejection of the plaintiffs' pleaded domestic activity as "implausible." *Platinum*, 61 F.4th at 268; *see also id.* (holding that the district court "erred in discounting" the pleadings in that way).

      This Court did not so "discount[]" the pleadings in *Fleming*. *Id.* Nor did the Court "cho[ose] between two plausible inferences that may be drawn from [Fleming's] factual allegations," Br. at 7 (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184-85 (2d Cir. 2012)), "resolve factual disputes," *id.* (quoting *Perttu v. Richards*, 605 U.S. 460, 472 (2025)), or otherwise contravene "bedrock principles of civil procedure," Reply at 2. Indeed, the

10

Court expressly did not do so. For example, the parties disputed the location of James River's headquarters: Fleming pleaded that it is in North Carolina, but James River furnished public documents indicating that it is in Bermuda. *Fleming I*, 2025 1993478, at *1 n.2. In the face of that contrary evidence, the Court drew an inference in Fleming's favor and accepted its pleaded allegation — and its representation at oral argument that James River's documents were inaccurate — as true. *Id.* The Court even noted its obligation to do just that on a motion to dismiss. *Id.* Likewise, the Court accepted all of Fleming's allegations of domestic and foreign factors as true, and weighed them to determine which predominated the transaction, as Second Circuit precedent requires. *See Cavello Bay*, 986 F.3d at 167 (listing pleaded facts alleging predominant domestic activity and finding they are "not enough"); *see also Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 96-97 (2d Cir. 2022) (rejecting plaintiff's argument that his "claims must be domestic because they involve both core domestic transactions . . . *and* manipulation of a domestic commodity market*" where the transactions were purchases of derivatives "tied to the value of a foreign asset" and where "the alleged manipulative conduct occurred almost entirely abroad"). *Cf. Anderson News*, 680 F.3d at 185 ("A court . . . may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."); *Perttu*, 605 U.S. at 472 (holding that district court erred in dismissing claims due to failure to exhaust where plaintiff alleged that prison officer's abuse both caused that failure and gave rise to substantive claims).

    In short, none of Fleming's cited caselaw undermines *Parkcentral* or *Cavello* or persuades the Court that following those cases was error.[2] "[W]here 'the Second Circuit has

---

[2] Fleming also cites *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, 585 F. Supp. 3d 405 (S.D.N.Y. 2022) for the proposition that dismissing its claims required an inference against Fleming. *See* Reply at 4. But *Harrington* concerned the manipulation of a stock that was "interlisted" on both NASDAQ and a Canadian exchange, the plaintiff's claims

spoken directly to the issue presented by this case . . . this Court is required to follow that decision unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.'" *Salazar v. Nat'l Basketball Assoc.*, No. 22-cv-07935 (JLR), 2025 WL 2830939, at *4 (S.D.N.Y. Oct. 6, 2025) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd* 854 F.3d 197 (2d Cir. 2017)).  Even an out-of-circuit case Fleming cites in criticizing *Parkcentral* notes that the Second Circuit continues to "treat the *Parkcentral* test as gospel." *In re Volkswagen AG Sec. Litig.*, 661 F. Supp. 3d 494, 513 n.6 (E.D. Va. 2023).

For these reasons, the Court finds that even if Fleming's reconsideration motion on this ground were procedurally proper, it would still fail because it does not provide any "controlling decisions or data that the [C]ourt overlooked . . . [and] that might reasonably be expected to alter" the Court's prior decision. *Lewis*, 2023 WL 3483992, at *1 (quoting *Schoolcraft*, 248 F. Supp. 3d at 508).  Fleming's motion for reconsideration based on this issue is, therefore, denied.

## II. Deception of the State Court Judge

Fleming next highlights its allegation that the "state court [compelled] Fleming to purchase securities in a domestic transaction as a direct result of [James River]'s misrepresentations" to that court.  Br. at 9.  In Fleming's view, "this litigation 'would not exist but for the role of a U.S. court' that itself was misled by [James River]." *Id.* (quoting Tr.

---

were "limit[ed] . . . to sales made on U.S. exchanges," and the plaintiff alleged that the foreign defendants' intent was "to manipulate [the] stock on U.S. exchanges." *Harrington*, 585 F. Supp. 3d at 412, 421.  This case, as explained, does not involve such predominantly domestic factors. In any event, to the extent that Fleming reads *Harrington* as holding that a plaintiff defeats a motion to dismiss on the basis of extraterritoriality by alleging "at least some conduct in the United States," *id.* at 421, the Court disagrees, and a district court opinion is not controlling authority, *see Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 154 (S.D.N.Y. 2011).

12

110:14-19). Yet, Fleming contends, the Court "made no mention of Fleming's allegations that the affidavit . . . was replete with misrepresentations such that [James River] deceived the state court itself." *Id.* That is incorrect.

In *Fleming I*, the Court explained that the parties' closing was predicated on the satisfaction of multiple conditions. "Specifically, under section 6.1 of the SPA, Fleming's obligation to close the transaction was contingent on, among other things, (1) James River having 'performed in all material respects its obligations, covenants and agreements under' the SPA; (2) the [A]greement's representations and warranties being true 'as of the date of th[e] [A]greement and as of the Closing Date as if made on the Closing Date'; and (3) the execution of a 'side letter to be negotiated by the parties in good faith prior to Closing setting forth certain rights of Fleming . . . with respect to certain reinsurance transactions involving' a James River affiliate, for which James River was required to 'have delivered to the Buyer [*i.e.*, JRG Re] a signature page' once the side letter was 'in a form mutually acceptable to the parties.'" *Fleming I*, 2025 WL 1993478, at *2 (alterations and omission in original) (quoting AC ¶ 56). The Court further noted Fleming's allegation that "these and other conditions precedent to closing were not satisfied." *Id.* (citing AC ¶¶ 88-94). The Court then highlighted that James River nevertheless submitted a sworn affidavit to the state court "represent[ing] that the 'conditions to closing' required under the Agreement 'had been or would be satisfied at closing,'" and that James River later "acknowledged" to the state court that those conditions had not, in fact, been satisfied. *Id.* at *9. Notwithstanding this, the Court held that the court-compelled closing did not render the transaction domestic, since the parties were before that court in the first place "only because of the SPA's forum-selection clause." *Id.* at *16. Therefore, the Court directly addressed this issue.

To the extent Fleming argues that the Court did not give these facts *enough* weight, that is not a ground for not reconsideration by this Court. *See Nat'l Rifle Ass'n of Am. v. Cuomo*, No.

13

18-cv-00566, 2020 WL 57296, at *2 (N.D.N.Y. Jan 6, 2020) ("[D]isagreement is not an appropriate grounds on which to base a motion for reconsideration."). But even if the Court were to reevaluate the issue, the Court would find no basis to disturb its dismissal of Fleming's claims.

The Court agrees, of course, that James River's alleged misrepresentation in state court, and the state court's order compelling Fleming to close, occurred domestically. But the Court disagrees that "Fleming's Count II — which is predicated on James River's misrepresentations to the state court —" should have survived the motion to dismiss because it "involves far more domestic conduct and turns on fewer foreign facts than Fleming's first cause of action involving only misrepresentations made to Fleming itself." Br. at 10. To the contrary, both claims turn on many of the same (predominantly foreign) facts.

The misrepresentation James River made to the state court — namely, that it had satisfied or would soon satisfy all the closing conditions of the SPA — presents the same issue that the Court identified with respect to the underlying misrepresentations: it boils down to "alleged misrepresentations to the BMA and purported violations of Bermuda law," and therefore supports the Court's determination that Fleming's claims are predominantly foreign. *Fleming I*, 2025 WL 1993478, at *13. Indeed, by telling the state court that it had satisfied the SPA's closing conditions, James River was representing, among other things, that it had satisfied all of its "'obligations, covenants and agreements under' the SPA." *Id.* at *2. Those included, for example, "section 2.13 of the SPA, . . . [which provided] that JRG Re has 'been in compliance in all material respects and has not been and currently is not in violation of any Laws.'" *Id*. at *13 (citation omitted). According to Fleming, this was a misrepresentation "because JRG Re violated Bermuda law by submitting false and outdated regulatory filings and by making illegal payments to James River." *Id.* (internal citations omitted). "Therefore, to find a material

14

misrepresentation [to the state court], the Court would first have to find a predicate violation of Bermuda's Insurance Act, Insurance Code, or Companies Act, such as that JRG Re violated Bermuda law before the SPA was signed when it submitted 'false' regulatory filings to the BMA in 2022; that it violated Bermuda law by failing to update those regulatory filings in 2023; or that it separately violated Bermuda law by making illegal payments to James River in February 2024." *Id*. The SPA also contained a warranty that "BMA approval was not necessary to take $139 million from JRG Re," and determining whether James River misrepresented to the state court that this warranty was true — which was another closing condition — "turns on Bermuda's Insurance Act and what is required thereunder." *Id*. "And Fleming's assertion that James River misrepresented that there had not been any event, occurrence, or condition that 'would reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect,' depends at least in part on finding that JRG Re violated Bermudan laws and regulations in a manner that had 'a material adverse effect' on the company's operations and finances." *Id*. (citation omitted). In addition, as the Court held, the parties' presence in state court was not, itself, sufficient domestic conduct given that it occurred "only because of the SPA's forum-selection clause." *Id.* at *16.[3]

In further support of Count II, Fleming argues that James River's domestic deceit in state court was "in fact the cause of [Fleming's] claimed injury," which was "exactly [w]hat [was] intended by" James River, and that this Court's "analysis 'ignores the simple fact that [Fleming] would never be in the position of a forced [purchaser] were it not for [that] fraud." Br. at 10

---

[3] Fleming takes issue with the Court's statement in *Fleming I* that, at oral argument, its counsel "concede[d]" that "forum-selection and choice-of-law clauses do not render an otherwise predominantly foreign transaction substantially domestic." *Fleming I*, 2025 WL 1993478, at *16; *see* Br. at 10-11. Rather, Fleming argues, counsel conceded only that "no 'one factor alone would do it.'" Br. at 10-11 (quoting Tr. 110:10-15). This is a distinction without a difference.

(alterations in original) (quoting *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 635 (2d Cir. 1967)). The Court is not persuaded by Fleming's reliance on *Vine*. In that case, an acquiring corporation conspired with its target's directors, who principally held the target's Class B shares, to buy out the Class B shares at an inflated price and underpay for the remaining Class A shares. *Vine*, 374 F.2d at 630-31. After purchasing 95% of the target's Class A shares in that way, the acquirer completed the merger, and the plaintiff was required to "exchange his shares for cash," *id*. at 635; "since this was a short form merger, the assent of the remaining A stockholders, like [the plaintiff] was not necessary," *id*. at 631. On appeal, the question before the Second Circuit was whether the plaintiff could, under those facts, be considered a "seller" of his shares within the meaning of section 10(b) and Rule 10b-5. *Id*. at 633-36. The court held in the affirmative. *Id*. at 635.

*Vine* is not relevant to this case. There is no debate here over whether Fleming is a purchaser within the meaning of section 10(b) or Rule 10b-5, and nothing in *Vine* speaks to whether a "forced" purchaser's resulting section 10(b) claim is predominantly domestic (or foreign) because of where the forcing took place. In any event, "the court's reasoning in *Vine* was clearly tied to the context of that case, namely, a short-form merger." *Alfandry v. Nikko Asset Mgmt. Co.*, No. 17-cv-05137 (LAP), 2019 WL 4747994, at *5 (S.D.N.Y. Sept. 30, 2019). Fleming acquired JRG Re by equity purchase, not short-form merger, *Fleming I*, 2025 WL 1993478, at *2, and Fleming "ha[s] provided no authority extending *Vine* to more analogous circumstances," *Alfandry*, 2019 WL 4747994, at *5. While Fleming may not have proceeded to closing without being compelled to do so by the state court, the fact remains that the terms of the transaction Fleming was compelled to close were predominantly foreign. *Vine* does not provide otherwise.

16

The domestic factors Fleming points to with respect to the state court misrepresentation are not "sufficient domestic activity" that render the underlying transaction domestic. Br. at 10 (quoting *Platinum*, 61 F.4th at 268). The underlying transaction involved "a private agreement governing the purchase of a foreign company whose shares are not listed on a U.S. exchange; a foreign seller; and a foreign buyer." *Fleming I*, 2025 WL 1993478, at *14. Even if the deception of a domestic court was involved, that deception still "require[s] this Court to actually engage with Bermuda law or regulations." *Id*. at *13. Therefore, even after reevaluating this argument, the Court finds no reason to disturb its prior ruling. Fleming's motion for reconsideration on this basis is denied.

## CONCLUSION

For the foregoing reasons, Fleming's motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 74.

Dated: December 2, 2025
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge